EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAN ALFONSO
individually and on behalf of all others
similarly situated,

    Plaintiff,

      v.

CUMULUS MEDIA, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-847-TWT

## OPINION AND ORDER

This is an Employee Retirement Income Security Act ("ERISA") action. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 36]. For the reasons set forth below, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 36].

### I. Background

The Plaintiff Daniel Alfonso ("Plaintiff" or "Alfonso") worked as an engineer from August 2014 to May 2019 at a wholly owned subsidiary of the Defendant Cumulus Media Inc. ("Defendant" or "Cumulus") in New York. (Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 1.) The Defendant is a leading media and entertainment company that owns and operates 428 radio stations across 87 markets, including nationally syndicated sports, news, talk, and entertainment programming. (Compl. at ¶

19.) The Defendant provides its employees the opportunity to save for retirement by participating in the Cumulus Media 401(k) Plan ("Plan"). (*Id.* at ¶ 2.) The Plan confers tax benefits on participating employees to incentivize saving for retirement. (*Id.* at ¶ 2.) Each Plan participant has a separate account, directs how his contributions are invested, and bears the risk of investment loss resulting from his exercise of control. (*Id.* at ¶ 3.)

On May 31, 2019, the Plaintiff signed a Confidential Separation Agreement ("Agreement") with the Defendant. (Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 2.) The Agreement acknowledged the termination of the Plaintiff's employment effective immediately, released the Defendant from all claims held by the Plaintiff as of that date, and provided the Plaintiff four weeks' severance pay at his current salary rate. (*Id.* ¶¶ 4–6.) Before signing the Agreement, the Plaintiff states that he did not read the document in its entirety, nor did he consult with an attorney about the effect of its terms. (Statement of Undisputed Material Facts in Opp'n to Def.'s Mot. for Summ. J. ¶¶ 9, 11.)

The Plaintiff filed this action, individually and on behalf of all others similarly situated, on February 24, 2020, alleging that the Defendant breached its fiduciary duties to the Plan participant.[1] (Compl. ¶¶ 11, 117–30.)

---

[1] Originally, Alfonso was joined as a named plaintiff by another former Cumulus employee named Cara Chiappa; however, the Court dismissed her from the case for lack of standing in a December 17, 2020 order.

2

Specifically, the Plaintiff claims that the Defendant breached its duties of loyalty and prudence by offering an investment menu composed of unduly expensive mutual funds, and that the Defendant failed to monitor or control the allegedly excessive compensation paid to the Plan's recordkeeper. (*Id.*) The Plaintiff contends that the Plan and its participants suffered millions of dollars in losses because of these alleged breaches. (*Id.* ¶¶ 121, 129.) The Defendant now moves for summary judgment on all claims, arguing that the Plaintiff released and promised not to sue the Defendant under the Agreement.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Analysis

The Defendant contends that the Agreement bars the Plaintiff from

3

bringing this action. The Agreement provides, in relevant part:

> Employee hereby irrevocably and unconditionally releases, waives, acquits, and forever discharges Cumulus from any and all charges, complaints, claims, promises, agreements, damages . . . which Employee now has, owns or holds, or claims to have, own or hold . . . . [T]his waiver, release, and discharge includes any claim or right based upon or arising under . . . [ERISA] (including, but not limited to, claims for breach of fiduciary duty under ERISA) . . . . Employee further agrees not to bring, continue, or maintain any legal proceedings of any nature whatsoever against Cumulus, before any court . . . by reason of or related to, any such allegations, claims, liability, and/or causes of action.

(Nodine Decl., Ex. 1 ("Agreement") ¶ 7.) The Defendant reads this release as a comprehensive promise not to bring any ERISA claims whatsoever, whether individual or derivative, related to the Plaintiff's rights or claims as a Plan participant. (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 1–2, 3–4.) The Plaintiff counters that the Agreement does not touch his claims for breach of fiduciary duty under ERISA because they belong to, and are brought on behalf of, the Plan, and he is thus incapable of waiving them. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 5–6.) In support, he cites a number of decisions holding that "an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under Section 1132(a)(2)." (*Id.* at 7 (punctuation omitted) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009)).)

The Court agrees with the Defendant. When he signed the Agreement, the Plaintiff relinquished "any claim or right based upon or arising under . . . [ERISA]," including the specific "claims for breach of fiduciary duty" at issue

here. (Agreement ¶ 7.) While the Plaintiff spends most of his brief arguing that he has no authority to release this type of claim, this question is something of a red herring. Indeed, the Defendant does not ask "the Court to rule that [the Plaintiff] waived any claims that belong to the Plan." (*See* Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 2 (emphasis omitted).) That is because the Plaintiff further agreed "not to bring, continue, or maintain any legal proceedings of any nature whatsoever" against the Defendant "by reason of or related to" the released ERISA claims. (Agreement ¶ 7.) In other words, even if the Plaintiff did not actually waive the Plan's ERISA claims, he nonetheless gave up his ability to bring those claims on behalf of the Plan. Therefore, the Court concludes that the Agreement forecloses this action.

The Plaintiff hardly addresses this language, except to say that his promise not to sue the Defendant covers only his "individual claims as an employee, and not the Plan's claims." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 9 (emphasis omitted).) But the Court does not read the Agreement so narrowly. The covenant not to sue is triggered whenever the Plaintiff brings a legal proceeding "by reason of or related to" the rights or claims that he released in the Agreement. (Agreement ¶ 7.) The Plaintiff's derivative action falls under this provision because ERISA gives only "participants" (and other irrelevant individuals) the right to bring claims for breach of fiduciary duty on behalf of a retirement plan, 29 U.S.C. § 1132(a)(2), and the Plaintiff forfeited this right when he waived "any claim or right based upon or arising under . . .

5

[ERISA][.]" (Agreement ¶ 7.) Stated differently, the Plaintiff's ability to bring this action not only relates to, but arises directly from, his rights as a Plan participant under ERISA, which he released in signing the Agreement. The Plaintiff cites no other language in the Agreement that purports to limit the covenant not to sue to individual, rather than related derivative, claims.

Two courts in this district have come to the same conclusion when confronted with similar release clauses. In *Stargel v. SunTrust Banks, Inc.*, 968 F. Supp. 2d 1215, 1221–22 (N.D. Ga. 2013), *vacated on other grounds*, 791 F.3d 1309 (11th Cir. 2015), the plaintiff had executed a settlement agreement that waived all of her ERISA claims and promised not to "institute, encourage, or join in as a class member or otherwise, any . . . legal, or other proceeding . . . involving" such claims. *Id.* at 1221–22 (citation omitted). As in this case, the *Stargel* plaintiff argued that this covenant not to sue did not extinguish her right to bring ERISA claims on behalf of her retirement plan. *See id.* at 1224. However, the court disagreed, holding that "[t]he terms of the [r]elease are simply unambiguous—Stargel cannot institute or join in the action before the Court." *Id.* A contrary holding, the court found, would render meaningless large portions of the release. *See id.* Likewise, the court in *In re SunTrust Banks, Inc. ERISA Litigation*, No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *1–2 (N.D. Ga. Aug. 17, 2016), reached the same conclusion in "a substantively

and procedurally similar case[.]"[2]

The Plaintiff's cited cases do not compel a different result because they either did not decide the specific question here or did not consider a release as broad as the Agreement. *See, e.g., Yost v. First Horizon Nat'l Corp.*, No. 08-2293-STA-cgc, 2011 WL 2182262, at *11 (W.D. Tenn. June 3, 2011) ("The parties have not even briefed the issue of whether an individual plan participant can release the ERISA claims of the Plan, and so the Court has no basis to reach that question."); *Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1098 (D. Nev. 2011) (court did not provide the terms of the relevant releases); *In re Schering*, 589 F.3d at 592 n.4 (plaintiff waived her "right to all remedies in any . . . action that may be brought *on my behalf*" (emphasis added)); *In re JDS Uniphase Corp. ERISA Litig.*, 2006 WL 2597995, at *1 (N.D. Cal. Sept. 11, 2006) (releases prohibited the plaintiffs "to file, cause to be filed, or otherwise pursue against the company . . . any and all claims *you* may now have or have ever had" (emphasis added)).

In the alternative, the Plaintiff contends that the Defendant has failed to demonstrate that he made a knowing and voluntary waiver of his ERISA

---

[2] The Plaintiff is mistaken that these decisions are distinguishable because they turned on language about "join[ing] in as a class member" in any legal proceedings. (*See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 8–9 (quoting *Stargel*, 968 F. Supp. 2d at 1222).) Neither court singled out this language as the basis for its holding; in fact, the *Stargel* court specifically stated that the plaintiff could not "institute" the action before it. *Stargel*, 968 F. Supp. 2d at 1224.

7

claims, based on the six-factor test in *Puentes v. UPS Inc.*, 86 F.3d 196 (11th Cir. 1996). (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 10.) The relevant factors are:

> (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff considered the agreement before signing it; (3) the clarity of the agreement; (4) the plaintiff's opportunity to consult with an attorney; (5) the employer's encouragement or discouragement of consultation with an attorney; (6) and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Puentes*, 86 F.3d at 198 (citation omitted). Of course, the onus is on the Plaintiff, not the Defendant, to present sufficient evidence to raise a genuine issue of material fact as to his knowledge and voluntariness in executing the Agreement. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 559 (7th Cir. 2001); *In re SunTrust Banks*, 2016 WL 4377131, at *3. In the Court's view, the Plaintiff has not met his burden.

First, while the Plaintiff may not have taken any business or law classes in college, he presumably graduated with at least a bachelor's degree to be employed as an engineer with the Defendant. (Alfonso Decl. ¶¶ 2, 14.) This is enough education to understand the terms of the Agreement, especially given the bold, capitalized summary printed above the signature block: **PLEASE READ AND CONSIDER THIS AGREEMENT CAREFULLY BEFORE EXECUTING. THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN**

8

CLAIMS. (Agreement, at 6.) *See, e.g.*, *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1124 (11th Cir. 2014) (finding a person who had taken college classes and had 20 years of industry experience could understand a release, despite no high school or college degree). Nor can the Plaintiff seek to avoid the Agreement based on his failure to read it. (Alfonso Decl. ¶ 7.) *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (collecting cases under New York law, where the Plaintiff executed the Agreement). He represented when he signed the release that he "carefully read this Agreement and knows and understands its contents . . . and enters into the Agreement knowingly and voluntarily." (Agreement ¶ 13.)

Second, the 45-day deadline to sign the Agreement gave the Plaintiff ample time to review and consider its terms. (*Id.* ¶ 15.) *See Bacon v. Stiefel Laboratories, Inc.*, No. 09-21871-CV, 2011 WL 4944122, at *5 (S.D. Fla. Oct. 17, 2011) (finding 45 days is "more than a sufficient amount of time . . . to evaluate the implications of signing" a release). Forty-five days was also enough time for the Plaintiff to consult with an attorney about the Agreement, and in fact, the Defendant specifically advised him in writing to consult with one before signing it. (*Id.*) Even without an attorney's guidance, the Agreement is clear and unambiguous as to its sweeping effect: it "irrevocably and unconditionally releases, waives, acquits, and forever discharges" the Defendant "from any and all charges, complaints, claims, promises, agreements, [and] damages . . . of any nature whatsoever, whether known or

9

unknown, suspected or unsuspected," including "any claim or right based upon or arising under" ERISA. (*Id.* ¶ 7.) The Plaintiff cannot claim that the Agreement "was long, densely worded, and included language [he] did not fully comprehend," especially after admitting to not fully reading it. (Alfonso Decl. ¶ 6.)

Finally, the Plaintiff received valuable consideration as part of the Agreement: specifically, four weeks of severance pay totaling $6,550.80. He acknowledged in signing the release that this compensation "exceed[s] any payment, benefit or other thing of value to which [he] would otherwise be entitled," and that it is "just and sufficient consideration for the waivers, releases and commitments set forth herein[.]" (Agreement ¶15(i).) The Plaintiff provides no evidence that he gave up any specific, quantifiable, or otherwise valuable benefits in exchange for the Agreement. Instead, he generally complains that he "was subjected to an onerous restriction of his freedom of speech via non-disparagement and confidentiality agreements." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 13.) Even if valid, this restriction is completely unrelated to the rights and claims under ERISA that the Plaintiff seeks to vindicate in this action. (*See* Compl., at 62–64.) Therefore, this factor, like the preceding five, weighs in favor of upholding the Agreement.

Under the six-factor *Puentes* test, the Court finds that there is no genuine issue of material fact as to whether the Plaintiff knowingly and voluntarily executed the Agreement. Because the Agreement bars the Plaintiff

10

from bringing this derivative ERISA action against the Defendant, the Court grants the Defendant's motion for summary judgment as to all claims.

### IV. Conclusion

For the reasons set forth above, this Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 36].

SO ORDERED, this 15 day of October, 2021.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge